## DOHERTY v. UNITED STATES.*
### No. 10998.

Circuit Court of Appeals, Eighth Circuit.
Jan. 29, 1938.

*Writ of certiorari denied 58 S.Ct. 763, 82 L.Ed. ——.

For opinion of the District Court overruling defendant's demurrer to the indictment, see 18 F.Supp. 793.

C. L. Baskins, of North Platte, Neb. (M. E. Crosby and Robert B. Crosby, both of North Platte, Neb., on the brief), for appellant.

Joseph T. Votava, U. S. Atty., of Omaha, Neb. (Fred G. Hawxby, Emmet L. Murphy, and Ambrose C. Epperson, Asst. U. S. Attys., all of Omaha, Neb., on the brief); for appellee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellant was convicted on an indictment containing fifteen counts, charging offenses under section 592, title 12 U.S.C.A. The first seven counts charged embezzlement of funds from a state bank insured under the Federal Deposit Insurance Corporation Act, 12 U.S.C.A. § 264, but not a member of the Federal Reserve System. The next four counts charged misapplication of the funds of the same bank, while the last four counts charged the making of false entries. The parties will be referred to as they were designated below.

To each of the counts of the indictment defendant filed a demurrer, in which he challenged the constitutionality of the act as it related to state banks that were non-member banks of the Federal Reserve System. The demurrers having been overruled, defendant entered a plea of not guilty to each of the counts. Upon trial, he was found guilty as to the third, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth counts, and not guilty as to the other counts of the indictment. He was sentenced to two years in the federal prison upon each of the several counts upon which he was convicted, the sentences, however, to run concurrently.

Section 592, title 12 U.S.C.A., Rev.St. § 5209, as amended by Act of August 23, 1935, provides that any officer, director, agent, or employee of any Federal Reserve Bank, or of any member bank, or of any

insured bank, as defined in the act, who embezzles or misapplies any of the moneys, funds, or credits of such bank, or who makes any false entries in any book, report, or statement of such bank, with intent to injure or defraud, shall be deemed guilty of a misdemeanor and punishable as in the act provided.

Section 264, Title 12 U.S.C.A., creates "a Federal Deposit Insurance Corporation * * * which shall insure, as hereinafter provided, the deposits of all banks which are entitled to the benefits of insurance under this section, and which shall have the powers hereinafter granted."

The act defines a state member bank as "any State bank which is a member of the Federal Reserve System, and the term 'State nonmember bank' means any State bank which is not a member of the Federal Reserve System." 12 U.S.C.A. § 264 (c) (2). It provides that nonmember banks may make application for and if approved become insured banks. It provides for insuring deposits of the member banks as well as of such nonmember banks as upon application have been approved. The act appropriates $150,000,000 out of the Treasury of the United States for the payment of capital stock in the corporation, the balance of the capital stock to be subscribed and paid for by Federal Reserve banks.

The act creating the corporation describes and enumerates its powers in great detail. Among the powers and duties enumerated and described is the power, when designated for that purpose by the Secretary of the Treasury, to "be a depositary of public moneys, except receipts from customs, under such regulations as may be prescribed by the said Secretary, and may also be employed as a financial agent of the Government. It shall perform all such reasonable duties as depositary of public moneys and financial agent of the Government as may be required of it." 12 U.S.C.A. § 264 (n).

The sole question presented on this appeal is that of the constitutionality of the acts under which the indictment was drawn. The grounds upon which the acts are assailed may be summarized as follows: (1) As the federal government has no general police power, the acts cannot be upheld as constitutionally valid; (2) the power to enact section 264, title 12 U.S. C.A., is not to be found among the enumerated powers of Congress; (3) state banks not members of the Federal Reserve System, though taking out insurance in the Federal Deposit Insurance Corporation, are not instrumentalities of the federal government, and hence, Congress 'is without power to enact the statute creating the offenses charged so far as nonmember state banks are concerned; (4) power granted to the Federal Deposit Insurance Corporation to receive deposits of the United States is a mere subterfuge.

The act is an elaborate one by which Congress created a scheme for insuring to a limited extent the deposits of the banks participating in the plan for insurance for the manifest purpose of stabilizing or promoting the stability of banks, and to aid the government in its evergrowing financial transactions.

Defendant does not directly challenge the power of Congress to create a corporation to act as a government depositary and financial agent, and that power must manifestly be conceded. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Osborn v. Bank, 9 Wheat. 738, 6 L.Ed. 204; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 249, 65 L. Ed. 577; First Natl. Bank v. Fellows, 244 U.S. 416, 37 S.Ct. 734, 61 L.Ed. 1233, L.R. A.1918C, 283, Ann.Cas.1918D, 1169; Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352; Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 630, 71 L.Ed. 1036; Weir v. United States, 7 Cir., 92 F.2d 634, 636. He, however, contends that Congress is without power to enact this law providing for the guarantee of deposits because in so doing it is exercising a police power which is not vested in Congress, but reserved to the states. But as Congress had the right to create this corporation and make it a depositary of public moneys of the United States and a financial agent of the government, it must be conceded the power to enact such regulatory legislation as it deemed necessary to protect and make effective this government agency. This contention overlooks the rule that where a certain field of activity becomes subject to one of the enumerated federal powers, then the federal government may in that field exercise authority comparable to state police power. Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; Seven Cases v. United States, 239 U.S. 510, 36 S.Ct. 190, 192, 60 L.Ed. 411, L.R.A.1916D, 164. As said by

the Supreme Court in Seven Cases v. United States, supra, "Congress is not to be denied the exercise of its constitutional authority over interstate commerce, and its power to adopt not only means necessary but convenient to its exercise, because these means may have the quality of police regulations."

Very recently the Circuit Court of Appeals of the Seventh Circuit, in Weir v. United States, supra, had occasion to consider a similar contention. In the course of the opinion that court said:

"And the power to inaugurate such systems and to create such institutions carries with it inevitably the power to preserve and protect them. In pursuance of this power of protection and preservation, Congress has created, as an agency of the government, the Federal Deposit Insurance Corporation to promote the soundness of banking and aid the government in the discharge of its fiscal transactions. Its obvious intent was, by insuring deposits, to prevent runs on banks by depositors, to preserve solvency of insured banks, and thus to keep open the channels of trade and commercial exchange. Clearly, under the decisions mentioned, the creation of the corporation was within the constitutional power of the government and the act is a proper basis for prosecutions for acts destructive of preservation of the agency thus created. Embezzlement by an officer of any insured state bank tends to end in loss to the Insurance Corporation and, by the same token, to the government itself. It tends to destroy the solvency of the bank, to cause closing thereof and, thus, to block the open channels of commercial exchange essential to the efficient operation of the government's fiscal and financial undertakings."

█ This would seem completely to answer the further contention made by defendant that power to enact section 264, title 12 U.S.C.A., is not to be found among the enumerated powers of Congress. Having the power to create the institution a government instrumentality, it necessarily had the power to adopt such means as it deemed necessary for the protection and preservation of that institution.

█ It is next contended that the nonmember state banks are not instrumentalities of the federal government and could not constitutionally be made such. The Supreme Court, in Westfall v. United States, supra, has specifically held that "Congress may employ state corporations with their consent as instrumentalities of the United States." In that case, the right of Congress to extend criminal liability to officers of state banks who were members of the Federal Reserve System was challenged. The court further said:

"It is not disputed that Rev.Stat. § 5209 [12 U.S.C.A. Sec. 592 and note], if applicable, punishes the bank manager, and those who aided and abetted him in his crime. Coffin v. United States, 156 U.S. 432, 447, 15 S.Ct. 394, 39 L.Ed. 481. The argument is that Congress has no power to punish offenses against the property rights of State banks. It is said that the statute is so broad that it covers such offenses when they could not result in any loss to the Federal Reserve Banks, and it is suggested that if upheld the Act will invalidate similar statutes of the States. This argument is well answered by Hiatt v. United States (C.C.A.) 4 F.2d 374, 377, certiorari denied, 268 U.S. 704, 45 S.Ct. 638, 69 L.Ed. 1167. Of course an act may be criminal under the laws of both jurisdictions. United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314. And if a State bank chooses to come into the System created by the United States, the United States may punish acts injurious to the System, although done to a corporation that the State also is entitled to protect."

In Hiatt v. United States, 7 Cir., 4 F.2d 374, 377, it is said:

"If, in the wisdom of Congress, it seemed that the inclusion of state banks and trust companies would contribute to such and other legitimate purposes of the Federal Reserve System, the right to so include them would seem not now open to question."

There would seem to be no impediment to the inclusion of such nonmember state banks as have voluntarily become a part of the Federal Reserve System to the extent of participation in the provision for insurance of their deposits. The state of Nebraska, through legislative enactment approved May 23, 1935, Nebraska Session Laws 1935, c. 8, p. 71, has specifically authorized banks of that state to accept insurance in the Federal Deposit Insurance Corporation, whether such banks were members or nonmembers of the Federal Reserve System, so that no question can

reasonably be urged that the act complained of usurps or is inconsistent with the power of the state to legislate.

It is finally urged that the power granted by the act to the Federal Deposit Insurance Corporation to receive deposits of the United States is a mere subterfuge, but that question, we think, is not one that is subject to judicial review. As said in Smith v. Kansas City Title & Trust Co., supra,

"But nothing is better settled by the decisions of this court than that, when Congress acts within the limits of its constitutional authority, it is not the province of the judicial branch of the government to question its motives."

In Langer v. United States, 8 Cir., 76 F.2d 817, we held that the Reconstruction Finance Corporation was a government agency. That corporation, like the one now under consideration, was authorized to receive deposits of public moneys and to act as a financial agent of the government.

We conclude that the counts of the indictment on which the defendant was found guilty stated public offenses, and that the lower court committed no error in overruling defendant's demurrers thereto. The judgment appealed from is affirmed.